(98 South. 168)

No. 24961.

LEHMAN, STERN & CO. v. E. MARTIN & CO. et al.

(Oct. 22, 1923. Rehearing Denied by Whole Court Dec. 3, 1923.)

(Syllabus by Editorial Staff.)

Stipulations ⬦14(1)—One entitled to fund substituted for property seized under attachment could recover interest from date of judgment only.

Where plaintiff, claiming a vendor's lien on cotton sold, procured its seizure under writs of attachment and sequestration while in the possession of a bank .under bills of lading pledged to secure a loan to defendant, and by agreement among the parties the cotton was allowed to be sold and the proceeds of the sale were deposited in the bank under an agreement whereby they were to be held subject to any judgment that might be rendered, and judgment for plaintiff was rendered, *held*, that plaintiff could recover interest on the amount of the deposit only from the date of judgment, and not from the date of deposit, notwithstanding that the bank had the use of the funds in the meantime.

Appeal from Civil District Court, Parish of Orleans; Hugh C. Cage, Judge.

Action by Lehman, Stern & Co. against E. Martin & Co. and others. Judgment for plaintiff for a less sum than that sued for, and it appeals. Affirmed.

McCloskey & Benedict, of New Orleans, for appellant.

Dart, Kernan & Dart, of New Orleans, for appellee German-American Nat. Bank.

By Division A, composed of O'NIELL, C. J., and ROGERS and BRUNOT, JJ.

ROGERS, J. Plaintiff, claiming a vendor's lien on cotton sold to defendant, procured writs of attachment and sequestration against said cotton. The levy of the writs disclosed the cotton to be in the possession of the German-American National Bank under bills of lading pledged to secure a loan

to defendant. The merchandise itself, at the time of the seizure, was on board ship for transportation to foreign shores.

In this situation the bank could have intervened and bonded the seized cotton. Act No. 51 of 1876; Act No. 109 of 1880. However, without exercising its right to bond, the bank entered into an agreement with plaintiff, to which agreement defendant was also a party, under the terms of which plaintiff was to bond the seizure, the merchandise was to go forward to its destination and be sold, and the proceeds thereof were to be held by the bank subject to any judgment that might be rendered "or after notice to the parties affecting the title to said cotton"; the proceeds to stand in place of the cotton. This agreement was reduced to writing and signed under date of March 15, 1912, two days after the seizure was levied.

On April 1, 1912, the cotton having, in the meantime, been carried abroad and sold, the proceeds of the sale were deposited in the bank in accordance with the agreement.

No further steps or proceedings were taken in the matter until October 28, 1920, when plaintiff, by supplemental petition filed in the original proceeding, asserting the superiority of its vendor's lien over the pledgee's lien, sued the bank for the amount of the deposit with legal interest thereon from April 1, 1912, the date it was made.

While this action was pending, the decision of this court in Parker Co. v. Martin & Co., 148 La. 791, 88 South. 68, was handed down. On the authority thereof the bank conceded plaintiff's right to the proceeds of the cotton, but denied liability for the interest thereon from the date of the deposit.

Judgment was rendered in favor of plaintiff for the amount of the deposit, with legal interest thereon from the date of judgment. The claim for interest from the date of the deposit was rejected. From this judgment plaintiff appealed.

The sole issue before the court arises from the dispute concerning the interest claimed from the date of the deposit, the question of priority of liens having been, admittedly, disposed of by the rule announced in Parker Co. v. Martin & Co., referred to supra.

The learned counsel for plaintiff predicates its right of recovery upon the theory that the agreement itself matured the debt; that eo instanti the bank either owed plaintiff or plaintiff owed the bank; that the agreement put, ex proprio vigore, the bank in default by plaintiff and plaintiff in default by the bank; and that the judgment, no matter when rendered, retroacted to crystallize the judicial position assumed by plaintiff.

Defendant's attitude is that it could only be liable for interest as the result of a contract, or for some breach of duty assumed therein for which it would be responsible in damages.

We find ourselves unable to accept the theory propounded by counsel for plaintiff.

The cotton at the time of the seizure was the property of Martin & Co. Plaintiff's right therein arose only from its vendor's lien to secure the balance due of the purchase price, and the bank's interest therein only arose from its pledgee's lien to secure the payment of the advances which it had made to the owner of the cotton on negotiable ocean bills of lading. The bank was not the debtor of plaintiff and plaintiff was not the debtor of the bank. This condition was not altered by the sale of the merchandise. The respective rights of the parties in the proceeds of the cotton were no greater and no less than they were in the cotton itself. Nor was the legal situation changed because it subsequently developed that the proceeds were insufficient to discharge Martin & Co.'s debt to plaintiff.

It was expressly stipulated:

"The proceeds shall stand in place of said cotton," and that "no advantage shall be taken

of the fact that the cotton has been sent forward and sold under this agreement."

The engagement of the bank to hold the proceeds in place of the cotton, "subject to any judgment that may be rendered herein or after notice to the parties affecting the title to said cotton," certainly imposed upon it no greater obligation than if it had undertaken to hold the cotton itself. The agreement merely preserved the rights of the parties pending a judicial determination thereof.

When plaintiff, by its supplemental petition, impleaded the bank for the amount of the proceeds, it was, in effect, making a demand for the cotton itself, since the extent of the depositary's contract was to deliver the cotton represented by the proceeds.

It is shown by the record that, while the said proceeds were held by the bank as a special deposit, there was no physical separation of same from its general funds. Plaintiff complains that the effect of this method of handling the deposit was to give the bank the use of the fund which was in violation of the covenant; that the contract went no further than to agree that the amount should be deposited or "held" in the bank, not used.

The parties to the contract were engaged in large commercial enterprises, and, presumably, were cognizable of the usages and customs prevailing in the banking business, at least in so far as transactions with the public and in mercantile affairs are concerned. Undoubtedly they contracted with reference to such usages and customs.

Considering the agreement in the light of this principle, we find that it is not even provided that the proceeds should be held as a special deposit, nor is any interest stipulated on the amount to be deposited.

Clearly, it was not the intention that the bank should gather together, in paper currency and specie, the amount of the deposit, place same in a separate package, with a memorandum of the agreement attached thereto, and set same aside in its safety vault.

As a matter of fact, it is not shown that the bank received the deposit in actual cash, and, with the knowledge of banking usages and customs possessed by persons of even limited business experience, it is not unreasonable to conclude that the said proceeds were delivered to the bank in the form of a check for the amount thereof, which check, in turn, was collected by the depositary through the usual channel of the Clearing House in accordance with the rules and methods of that institution.

It is certain that it was never in the contemplation of the parties that whosoever should be ultimately decreed to be entitled to the fund should receive the identical thing which had been originally deposited. The only reasonable expectation they could have had was that the adjudged owner would receive another thing of the same kind and of equal value; in other words, a sum of money equal to the amount that had been deposited.

The fact that the bank may have had the use of the money during the time intervening between the date of the deposit and the date of the decree adjudging the fund to the party thereto entitled was merely an incident of the contract, and not one of its obligations.

Judgment affirmed.

Rehearing denied by the WHOLE COURT.